IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JAMES T. WILLIAMS,<br><br>              Defendant. | CRIMINAL NO. 95-407-2 |

**OPINION**

**Slomsky, J.**                                                    **February 24, 2025**

## I.    INTRODUCTION

On November 29, 2023, Defendant James T. Williams filed an "Emergency Motion Under Rule 60(b)(6) to Amend or Vacate Judgment Based upon Change in Circumstances and to Correct Injustice."  (Doc. No. 523.)   Despite the description of the Motion in the title, it is in reality Defendant's fourth Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i).   On February 4, 2025, Defendant filed a fifth Motion for Compassionate Release repeating the same arguments made in his fourth Motion.[1]   (Doc. No. 540.)   The Compassionate Release Statute, 18 U.S.C. § 3582(c)(1)(A)(i), provides in part:

---

[1]   On August 10, 2020, Defendant filed his first Motion for Compassionate Release, arguing that a "change to the applicability of the sentencing provision in 18 U.S.C. § 924(c)" constituted sufficiently "extraordinary and compelling" circumstances to warrant compassionate release. (See Doc. No. 469 at 3.)    On November 10, 2021, this Court denied that Motion for Compassionate Release, relying on United States v. Andrews, which held that the First Step Act's nonretroactive changes to § 924(c) was not an "extraordinary and compelling reason" for

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [§ 3553(a)] to the

─────────────────────────

allowing compassionate release.  (Doc. No. 492 at 2; 12 F.4th 255, 258 (3d Cir. 2021).)

On July 11, 2022, Defendant filed a second Motion for Compassionate Release, arguing that the United States Supreme Court's decision in Concepcion v. United States abrogated Andrews by holding that nonretroactive changes in sentencing law constitutes "extraordinary and compelling" reasons for granting compassionate release.  (Doc. No. 500 at 1.)  On October 26, 2022, this Court denied that Motion on the ground that "Concepcion did not abrogate Andrews."  (Doc. No. 506 at 2.)  On November 4, 2022, Defendant filed a Notice of Appeal to the Third Circuit challenging the denial of his Motion.  (Doc. No. 509.)  On May 17, 2023, the Third Circuit affirmed the Court's denial, holding as follows:

> As the District Court correctly held, nonretroactive changes to mandatory minimums, like the change in law Williams relied upon, do not present extraordinary or compelling reasons for release. See [United States v.] Andrews, 12 F.4th [255,] 261 [(3d Cir. 2021)] (reasoning that "the imposition of a sentence that was not only permissible but statutorily required at the time is neither an extraordinary nor a compelling reason to now reduce the same sentence") (cleaned up). Williams contends that Concepcion constituted an intervening change of law and permitted the District Court to consider nonretroactive changes in the law alongside other extraordinary and compelling reasons for release. While the Supreme Court in Concepcion clarified that courts may consider intervening changes in law when a defendant is resentenced under the First Step Act, see 142 S. Ct. at 2396, it did not address the "threshold question" at issue here: "whether [Williams] established an 'extraordinary and compelling' reason for release" under the compassionate release statute, United States v. King, 40 F.4th 594, 596 (7th Cir. 2022). Andrews thus continues to foreclose Williams's argument that he should be granted compassionate release based on the change in the sentencing law.

United States v. Williams, No. 22-3219, 2023 WL 3496340, at *1 (3d Cir. May 17, 2023).

On January 4, 2023, Defendant filed a third Motion for Compassionate Release, again arguing that extraordinary and compelling reasons and changed circumstances in 18 U.S.C. § 924(c) warranted a reduction in his sentence.  (Doc. No. 512 at 2–3.)  On June 13, 2023, this Court denied that Motion finding that Defendant had "not presented any reason that would warrant relief under the compassionate release statute in his new Motion."  (Doc. No. 520 at 3.)

extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

In his Motions for Compassionate Release, Defendant argues that there are extraordinary and compelling reasons that warrant a reduction in his sentence. In this regard, he relies on United States Sentencing Guideline § 1B1.13(b)(6), which provides:

> (6) UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

§ 1B1.13(b)(6) (Nov. 1, 2023).

In considering Defendant's situation under this guideline, which is part of a larger Policy Statement, Defendant has served at least 10 years of an unusually long sentence of imprisonment of 687 months. Furthermore, under this guideline, a nonretroactive change in the law may be considered in determining whether he presents an extraordinary and compelling reason. Here, Williams received a 120-month mandatory consecutive sentence on Count Six for his Section 924(c) conviction. He also received a 240-month sentence on Count Seven, consecutive to the sentence imposed on Count Six, for his second Section 924(c) conviction.

Defendant contends that his 240-month mandatory consecutive sentence imposed on Count Seven of his convictions was for a second violation of 18 U.S.C. § 924(c), i.e., a "stacked" Section 924(c) sentence that if imposed today would only be a 120-month sentence. This change in

3

sentencing is based on the First Step Act, Pub. L. No. 115-391, § 403(b), 132 Stat. 5194 (2018), which made a nonretroactive change to the "stacked" penalties for violating 18 U.S.C. § 924(c).[2] And as noted, if he were sentenced today, he would not receive a 20-year mandatory consecutive sentence for his second Section 924(c) conviction, but would only receive a 10-year sentence pursuant to the version of 18 U.S.C. § 924(c)(1) in effect on the date of sentencing for his use of an semiautomatic assault weapon in the commission of his Section 924(c) offense. This is because when he was sentenced on January 29, 1997, his sentence on Count Six, the other § 924(c) offense, was not final on the day he was sentenced. The provision on finality was added by the First Step Act. See 18 U.S.C § 924(c)(1)(C).[3]

---

[2] Pub. L. 115-391, § 403 (b), 132 Stat. 5222 provides:

> (b) APPLICABILITY TO PENDING CASES.—This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment.

[3] At the time Defendant was sentenced in 1997, 18 U.S.C. § 924(c)(1) provided that:

> In the case of a second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years . . . Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment . . . .

See 18 U.S.C. § 924(c)(1) (1997). Several years later, Congress changed this provision to read in part as follows:

> (C) In the case of a second or subsequent conviction under this subsection, the person shall-
> (i) be sentenced to a term of imprisonment of not less than 25 years . . .
>
> (D) Notwithstanding any other provision of law-
> (i) a court shall not place on probation any person convicted of a violation of this subsection; and

Next, he argues that there are individual circumstances in his case that amount to extraordinary and compelling reasons for granting compassionate release. They are as follows: (1) his "relative youth" (age 27) at the time of incarceration versus the 28 years he has already spent in prison; (2) "there is no likelihood of recidivism"; (3) he has been rehabilitated; (4) "multiple Constitutional violations plague [his] conviction"; and (5) the sentencing disparity between Williams' sentence and the sentences imposed on his co-defendants. (Doc. No. 523, at 7.) For all these reasons, Defendant requests a reduction of sentence under Sentencing Guideline 1B1.13(b)(6). But because none of his arguments, whether considered individually or collectively, warrant a reduction of his sentence for compassionate release under 18 U.S.C § 3582 (c)(1)(A)(ii), his Motions (Doc. Nos. 523, 540) will be denied.

---

(ii) no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person . . . .

See 18 U.S.C. § 924(c)(1) (2001). And after the passage of the First Step Act, 18 U.S.C. § 924(c)(1) now reads in part:

(C) In the case of a violation of this subsection that occurs after a prior conviction under this subsection has become final, the person shall—
(i) be sentenced to a term of imprisonment of not less than 25 years . . .

(D) Notwithstanding any other provision of law--
(i) a court shall not place on probation any person convicted of a violation of this subsection; and
(ii) no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person . . . .

See 18 U.S.C. § 924(c)(1) (2022).

## II.    BACKGROUND

It is important to note the factual history of Defendant's case. The events leading up to his convictions and sentencing are accurately summarized in the Government's Response to Defendant's "Emergency Motion Under Rule 60(b)(6) to Amend or Vacate Judgment Based Upon Change in Circumstance and to Correct Injustice" (Doc. No. 524) as follows:

> On March 14, 1996, Williams was charged in a third superseding indictment with a series of armed bank robberies he committed with a number of others in Allentown, Pennsylvania, in 1995. Specifically, Williams was charged in the indictment with conspiracy to commit armed bank robbery, in violation of 18 U.S.C. § 371; three counts of armed bank robbery, in violation of 18 U.S.C. § 2113(d); and two counts of carrying and using firearms, in violation of 18 U.S.C. § 924(c).
>
> The charges involved three bank robberies: (1) the robbery of a First Fidelity Bank branch on June 14, 1995; (2) the robbery of a National Penn Bank branch on July 13, 1995; and (3) the robbery of a CoreStates Bank branch on July 19, 1995. The two Section 924(c) charges were based on Williams' carrying of a MAC-10 semi-automatic weapon during the June 14, 1995, CoreStates Bank robbery, and his striking a bank customer with a MAC-11 semi-automatic weapon, causing the gun to discharge, during the July 19, 1995, CoreStates Bank robbery.
>
> Specifically, the evidence presented at Williams' trial in October 1996 showed that during the June 14, 1995, robbery, Williams pointed his MAC-10 semi-automatic weapon at the employees and customers, while confederate Lamar Peterson took approximately $7,459 from the tellers. The July 13, 1995, robbery was committed by coconspirators Dumont Bush and Ralph Logan, while Williams waited in a car outside. It netted approximately $10,424. In the July 19, 1995, robbery, Williams held a MAC-11 semi-automatic weapon on the bank employees while co-conspirators Logan and Curtis French went behind the teller counter to grab the money. As seen on videotape, Williams struggled with a man who walked into the bank during the robbery. Williams hit the man in the head with the MAC-11, causing the gun to discharge. As the man lay bleeding on the bank floor, Williams, French, and Logan raced out of the bank to a waiting rental car parked nearby. The robbery netted approximately $9,174.
>
> At trial, the government also admitted evidence that Williams and Peterson robbed the Drovers Bank in York, Pennsylvania, outside this district, on July 26, 1995, one week after the last robbery in the Eastern District of Pennsylvania. In addition, the

government presented evidence, some of it captured in phone conversations while Williams was in prison, that he threatened and intimidated witnesses, and directed a third party to tell a witness to destroy evidence. Further, in March 1996, the government was informed by Logan, by then a cooperating co-defendant, that Williams had attacked and threatened him at FCI Fairton, where both men were housed together for less than a day that month.

On October 30, 1996, the jury found Williams guilty of all charges against him. On January 29, 1997, this Court (Van Antwerpen, J.) sentenced Williams to a total of 687 months' imprisonment, consisting of 60 months' imprisonment on Count One and 327 months' imprisonment on Counts Three, Four, and Five, all sentences to be served concurrently; 120 months' imprisonment on Count Six, to be served consecutively to the sentences imposed on Counts One, Three, Four, and Five; and 240 months' imprisonment on Count Seven, to be served consecutively to the sentences imposed on Counts One, Three, Four, Five, and Six. (Counts Six and Seven charged aiding and abetting of the using and carrying a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c) and (2), and so carried mandatory consecutive sentences of 10 and 20 years. PSR ¶ 134.) The Court also imposed a total of $6,000 in restitution. (Doc. Nos. 231, 233.) Williams appealed to the Third Circuit, which affirmed the judgment. United States v. Williams, 151 F.3d 1027 (3d Cir. 1998). Since then, Williams has filed numerous collateral challenges, all of which have failed.

(Doc. No. 524 at 2–4.)

## III.    ANALYSIS

### A.    Defendant's Argument That "Stacking" of His Conviction Under 18 U.S.C. § 924(c) is an Extraordinary and Compelling Reason for His Release Is Without Merit

Defendant's argument that the "stacking" of his second conviction under 18 U.S.C. § 924(c) resulting in the imposition of a consecutive 240-month sentence is an extraordinary and compelling reason for his release is without merit.  Defendant argues that his 240-month mandatory consecutive sentence for a second violation of 18 U.S.C. § 924(c), i.e., a "stacked" Section 924(c) sentence, is a change in the law that may be considered in determining whether Defendant presents an extraordinary and compelling reason for compassionate release pursuant to Guideline Section 1B1.13(b)(6).  Once again, this Section provides as follows:

(6) UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

§ 1B1.13(b)(6) (Nov. 1, 2023)

However, in <u>United States v. Rutherford</u>, 120 F.4th 360 (3d Cir. 2024), the court held that in the determination of whether a defendant has presented an "extraordinary and compelling reason" allowing consideration for compassionate release, a nonretroactive change in law under Section 924(c) may not be considered. The Third Circuit held that Section 1B1.13(b)(6) may not be applied to allow consideration for compassionate release based on the change in sentencing law in 18 U.S.C. § 924(c) adopted in Section 403(b) of the First Step Act of 2018, given Congress' declaration in Section 403(b) that the change does not apply retroactively in cases in which the sentence was imposed prior to adoption of the 2018 Act. The court stated, "[w]hen it comes to the modification of § 924(c), Congress has already taken retroactivity off the table, so we cannot rightly consider it." <u>Rutherford</u>, 120 F.4th at 378. The court held that the development does not stand as an "extraordinary and compelling reason" allowing consideration, either alone or in combination with other factors. <u>Id.</u> Consequently, based on <u>Rutherford</u>, Defendant's "stacking argument" under Guideline Section 1B1.13(b)(6) is without merit and is not a reason for granting compassionate release.

## B. Defendant's Five Additional Circumstances Do Not Warrant Compassionate Release

As noted earlier, Defendant submits the following five considerations as "individualized circumstances" under Section 1B1.13(b)(6): (1) his "relative youth" (age 27) at the time of

incarceration versus the 28 years he already has spent in prison; (2) "there is no likelihood of recidivism"; (3) he has been rehabilitated; (4) "multiple Constitutional violations plague [his] conviction"; and (5) the sentencing disparity between Williams' sentence and the sentences imposed on his co-defendants. (Doc. No. 523 at 7.)  He contends that these "individualized circumstances," whether considered alone or collectively, warrant reduction of his sentence under the "unusually long sentence provision" of U.S.S.G. § 1B1.13(b)(6).  However, none of these circumstances warrant a reduction of Defendant's sentence under Section 1B1.13(b)(6).

First, at age 27, Defendant was not especially young when he committed and was convicted for his crimes in light of the total picture of his criminal history.  In its Response, the Government highlights that he was already considered a career offender when he was sentenced for the bank robberies.  (See Doc. No. 524 at 14.)  Second, Defendant has a lengthy criminal record which includes a murder conviction and the robberies described above in which he assaulted victims.  In addition, the Government highlights his numerous disciplinary infractions while incarcerated. (See Doc. No. 524 at 5.)  Although the last incident occurred in January 2014, his criminal convictions and disciplinary infractions show that his risk of recidivism is high.  Third, Defendant argues that he has been rehabilitated in prison, but unfortunately for him, rehabilitation alone is not a basis for compassionate release.  See 28 U.S.C. § 994(t).  Fourth, Defendant argues that multiple constitutional arguments plague his conviction, but he does not identify them.  In any event, constitutional violations are not an appropriate ground for compassionate release and may only be raised in a motion for writ of habeas corpus, assuming he can satisfy the requirements for the grant of such a motion.  See United States v. Webb, No. 09-755, 2022 WL 206174, at *3 (E.D. Pa. Jan. 24, 2022).  See also United States v. Henderson, 858 F. App'x 466, 469 n.2 (3d Cir. 2021) (not precedential) (holding a previously rejected claim of sentencing error does not qualify as an

"extraordinary and compelling reason" for compassionate release, and to the extent that the defendant argues that his sentence should be vacated on this basis, such a claim can be raised only in a § 2255 motion); United States v. Ferguson, 55 F.4th 262, 270 (4th Cir. 2022) (holding a compassionate release motion may not be employed to attack a conviction or sentence and noting that "[b]ecause § 2255 is the exclusive method of collaterally attacking a federal conviction or sentence, a criminal defendant is foreclosed from the use of another mechanism, such as compassionate release, to sidestep § 2255's requirements.")

Finally, Defendant argues that the sentencing disparity between him and his co-defendants warrant a sentence reduction, but this argument fails because the judge who sentenced him was aware of the nature of his criminal conduct and prior convictions at the time of sentencing and imposed the sentence described above. The judge was also at least aware of the sentence imposed on co-defendant Dumont Bush at the time he sentenced Defendant Williams on January 31, 1997, and there are no circumstances here that would warrant a change in Defendant's sentence at this time.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motions for Compassionate Release (Doc. Nos. 523, 540) will be denied. An appropriate Order follows.